# EXHIBIT 35

Issued To: _Davis_     Memorandum No. _1141_

# CONFIDENTIAL OFFERING MEMORANDUM

## Banyon Income Fund, LP

### General Partner
**Banyon 1030-32, LLC**
2455 East Sunrise Blvd, Suite PHS, Fort Lauderdale, FL 33304

Banyon Income Fund, LP, a Delaware private investment limited partnership seeks to achieve a preferred return for investors by purchasing at a discount settlements and related periodic revenue stream from individual plaintiffs who have settled their labor and employment related lawsuits or claims, and who would otherwise receive their settlement amounts over a period of time. The purchased settlements are secured by the full settlement amounts which will have been deposited in a trust account established by the plaintiff's attorney for the benefit of the plaintiff prior to a purchase by Banyon Income Fund, LP. These settlement amounts are released to Banyon Income Fund, LP over time to liquidate the purchased settlement. **This Confidential Offering Memorandum relates to the offering of limited partnership interests in Banyon Income Fund, LP.** Prospective Limited Partners should carefully read and retain this Confidential Offering Memorandum.

The minimum capital commitment of a Limited Partner is one million dollars $1,000,000 (subject to the discretion of the General Partner to accept lesser amounts). Each prospective Limited Partner shall be required to deliver an amount equal to twenty five percent (25%) of its aggregate initial capital commitment upon delivery of its subscription for the initial capital commitment.

The General Partner is subscribing in an amount equal to ten percent (10%) percent of the aggregate Commitments received hereunder.

**THE LIMITED PARTNERSHIP INTERESTS OF BANYON INCOME FUND, LP ARE SPECULATIVE AND INVOLVE A HIGH DEGREE OF RISK. THESE SECURITIES HAVE NOT BEEN REGISTERED WITH OR APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY OTHER STATE OR FEDERAL GOVERNMENTAL AGENCY OR ANY NATIONAL SECURITIES EXCHANGE, NOR HAS ANY SUCH AUTHORITY PASSED UPON THE ACCURACY OR ADEQUACY OF THIS MEMORANDUM OR THE MERITS OF AN INVESTMENT IN THE INTERESTS OFFERED HEREBY. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.**

The date of this Offering Memorandum is April 30, 2009



Exhibit
806
12-20-13
⊘ESQUIRE

i

GL025818



*This Memorandum is individually directed to each offeree named on the cover page hereto and does not constitute an offer to any other person or to the public generally to subscribe for or otherwise acquire limited partnership interests. Distribution of this Memorandum to any person other than the offeree and those persons, if any, retained to advise such offeree with respect to its evaluation of an investment in the limited partnership interests, is unauthorized, and any disclosure of any of the contents hereof, without the prior written consent of Banyon Income Fund, LP is prohibited. The offeree agrees to return this Memorandum and any other information submitted in conjunction herewith to Banyon Income Fund, LP in the event the offeree does not participate in this offering if so requested by the Banyon Income Fund, LP. Each offeree, by accepting delivery of this Memorandum, agrees to the foregoing.*

## DISCLOSURE REGARDING FORWARD-LOOKING STATEMENTS

This Memorandum contains forward-looking statements, all of which are subject to a number of risks and uncertainties which are difficult to predict and many of which are beyond Banyon Income Fund, LP's control. Forward-looking statements are typically identified by the words "may," "will," "believe," "expect," "anticipate," "intend," "estimate" and similar expressions. Actual results or events could differ materially from those contemplated by these forward-looking statements as a result of a number of factors, including those set forth under the heading "Certain Risk Factors" at page 13. It is not reasonably possible to itemize all of the many factors and specific events that could affect the outlook of a company purchasing settlements and related periodic revenue streams from individual plaintiffs in labor and employment related lawsuits. In light of such risks and uncertainties, Banyon Income Fund, LP cannot assure you that the results and events contemplated by the forward-looking statements will in fact be realized. Offerees should not place undue reliance on these forward-looking statements. Banyon Income Fund, LP will not undertake any obligation to update or revise any forward-looking statements. All subsequent written or oral forward-looking statements attributable to Banyon Income Fund, LP or persons acting on Banyon Income Fund, LP's behalf are expressly qualified in their entirety by the factors described above.

## SECURITIES RISK DISCLOSURE

PROSPECTIVE INVESTORS SHOULD NOTE THAT THE INVESTMENT STRATEGY EMPLOYED ON BEHALF OF THE PARTNERSHIP INVOLVES SIGNIFICANT RISKS AS DESCRIBED UNDER "CERTAIN RISK FACTORS" AT PAGE 13 OF THIS OFFERING MEMORANDUM.

THESE SECURITIES ARE BEING OFFERED UNDER AN EXEMPTION FROM REGISTRATION PURSUANT TO SECTION 4(2) OF THE SECURITIES ACT OF 1933, AS AMENDED (THE "1933 ACT"), AND SECURITIES AND EXCHANGE COMMISSION REGULATION D PROMULGATED THEREUNDER. WHETHER THESE SECURITIES ARE EXEMPT FROM REGISTRATION PURSUANT TO REGULATION D OR OTHERWISE HAS NOT BEEN PASSED UPON BY THE SECURITIES AND EXCHANGE COMMISSION, THE ATTORNEY GENERAL OF ANY STATE OR ANY OTHER REGULATORY AGENCY, NOR HAS ANY SUCH AGENCY PASSED UPON THE MERITS OF THIS OFFERING. ANY REPRESENTATION TO THE CONTRARY OR ANY REPRESENTATION THAT ANY REGULATORY AGENCY HAS PASSED UPON THE

GL025819

ACCURACY OR COMPLETENESS OF THIS PRIVATE PLACEMENT MEMORANDUM OR THE LIMITED PARTNERSHIP AGREEMENT ACCOMPANYING IT IS A CRIMINAL OFFENSE.

IN NO EVENT SHALL THIS MEMORANDUM BE DEEMED TO BE AN OFFER TO ANY PERSON OTHER THAN THE PERSON TO WHOM IT IS ADDRESSED.

---

THIS MEMORANDUM IS SUBMITTED IN CONNECTION WITH THE PRIVATE PLACEMENT OF THESE LIMITED PARTNERSHIP INTERESTS AND MAY NOT BE REPRODUCED OR USED FOR ANY OTHER PURPOSE.

---

THE PARTNERSHIP AND THE GENERAL PARTNER ARE NOT PRESENTLY, AND DO NOT PROPOSE IN THE FUTURE TO BECOME, REGISTERED AS AN INVESTMENT COMPANY UNDER THE INVESTMENT COMPANY ACT OF 1940.  LIMITED PARTNERS WILL NOT, THEREFORE, BE ACCORDED THE PROTECTIONS EMBODIED IN SUCH LEGISLATION.

---

THE GENERAL PARTNER HAS AGREED TO MAKE AVAILABLE, PRIOR TO THE CONSUMMATION OF THE TRANSACTION CONTEMPLATED HEREIN, TO EACH OFFEREE OF LIMITED PARTNERSHIP INTERESTS AND ITS REPRESENTATIVE(S) THE OPPORTUNITY TO ASK QUESTIONS OF, AND RECEIVE ANSWERS FROM, THE GENERAL PARTNER OR ANY PERSON ACTING ON ITS BEHALF CONCERNING THE TERMS AND CONDITIONS OF THIS OFFERING, AND TO OBTAIN ANY ADDITIONAL INFORMATION, TO THE EXTENT IT POSSESSES SUCH INFORMATION OR CAN ACQUIRE IT WITHOUT UNREASONABLE EFFORT OR EXPENSE, NECESSARY TO VERIFY THE ACCURACY OF THE INFORMATION SET FORTH HEREIN.

---

THE LIMITED PARTNERSHIP INTERESTS MAY NOT BE TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE 1933 ACT OR AN OPINION OF COUNSEL THAT AN EXEMPTION FROM REGISTRATION IS AVAILABLE.

---

THERE ARE NO TAX BENEFITS FROM AN INVESTMENT IN THE PARTNERSHIP AND ANY INVESTMENT SHOULD BE MADE SOLELY FOR ECONOMIC REASONS.

---

PROSPECTIVE LIMITED PARTNERS ARE NOT TO CONSTRUE THE CONTENTS OF THIS MEMORANDUM OR ANY PRIOR OR SUBSEQUENT COMMUNICATION FROM THE PARTNERSHIP, GENERAL PARTNER, ITS AFFILIATES, OR ANY PROFESSIONAL ASSOCIATED WITH THIS OFFERING, AS LEGAL, TAX OR INVESTMENT ADVICE.  EACH

GL025820

PROSPECTIVE LIMITED PARTNER SHOULD CONSULT WITH AND RELY ON ITS OWN PERSONAL COUNSEL, ACCOUNTANT AND OTHER ADVISORS AS TO LEGAL, TAX AND ECONOMIC IMPLICATIONS OF THE INVESTMENT DESCRIBED HEREIN AND ITS SUITABILITY FOR IT. NO REPRESENTATION OR WARRANTY IS OR CAN BE MADE AS TO THE ECONOMIC RETURN THAT MAY ACCRUE TO A LIMITED PARTNER.

---

NO DISTRIBUTION OF THIS MEMORANDUM IN WHOLE OR IN PART, OR THE DIVULGENCE OF ANY OF ITS CONTENTS, IS PERMITTED UNLESS AUTHORIZED BY THE GENERAL PARTNER. NO OFFERING LITERATURE OR ADVERTISING IN WHATEVER FORM SHALL BE EMPLOYED IN THE OFFERING OF THESE LIMITED PARTNERSHIP INTERESTS, EXCEPT THE INFORMATION CONTAINED HEREIN OR AS OTHERWISE AUTHORIZED BY THE GENERAL PARTNER. NO PERSON HAS BEEN AUTHORIZED TO MAKE REPRESENTATIONS, OR GIVE ANY INFORMATION, WITH RESPECT TO THESE LIMITED PARTNERSHIP INTERESTS, EXCEPT THE INFORMATION CONTAINED HEREIN.

---

THIS MEMORANDUM DOES NOT CONSTITUTE AN OFFER OR SOLICITATION TO ANYONE IN ANY STATE OR IN ANY JURISDICTION IN WHICH SUCH AN OFFER OR SOLICITATION IS NOT AUTHORIZED.

---

REFERENCE SHOULD BE MADE TO THE LIMITED PARTNERSHIP AGREEMENT, SUPPORTING DOCUMENTS AND OTHER INFORMATION FURNISHED HEREWITH FOR THE COMPLETE INFORMATION CONCERNING THE RIGHTS AND OBLIGATIONS OF THE PARTIES THERETO. CERTAIN PROVISIONS OF SUCH AGREEMENTS ARE SUMMARIZED IN THIS MEMORANDUM, BUT IT SHOULD NOT BE ASSUMED THAT THE SUMMARIES ARE COMPLETE.

---

### FOR GEORGIA INVESTORS

THESE LIMITED PARTNERSHIP INTERESTS HAVE BEEN ISSUED OR SOLD IN RELIANCE ON PARAGRAPH THIRTEEN (13) OF CODE SECTION 10-5-9 OF THE GEORGIA SECURITIES ACT OF 1973, AND MAY NOT BE SOLD OR TRANSFERRED EXCEPT IN A TRANSACTION WHICH IS EXEMPT UNDER SUCH ACT OR PURSUANT TO AN EFFECTIVE REGISTRATION UNDER SUCH ACT.

---

### FOR FLORIDA INVESTORS

PURSUANT TO THE LAWS OF THE STATE OF FLORIDA, IF SALES ARE MADE TO FIVE (5) OR MORE INVESTORS IN THE STATE OF FLORIDA, ANY FLORIDA INVESTOR MAY, AT ITS OPTION. WITHDRAW, UPON WRITTEN (OR TELEGRAPHIC) NOTICE, ANY PURCHASE

GL025821

HEREUNDER WITHIN A PERIOD OF THREE (3) DAYS AFTER (A) THE INVESTOR FIRST TENDERS OR PAYS TO THE PARTNERSHIP, AN AGENT OF THE PARTNERSHIP OR AN ESCROW AGENT THE CONSIDERATION REQUIRED HEREUNDER, (B) THE INVESTOR DELIVERS ITS EXECUTED SUBSCRIPTION AGREEMENT, OR (C) THE AVAILABILITY OF THAT PRIVILEGE IS COMMUNICATED TO SUCH INVESTOR, WHICHEVER OCCURS LATER.

---

## INVESTORS IN OTHER STATES

IN MAKING AN INVESTMENT DECISION INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE PARTNERSHIP AND THE TERMS AND CONDITIONS OF THIS OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. THESE SECURITIES HAVE NOT BEEN RECOMMENDED BY ANY UNITED STATES FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

---

## NASAA UNIFORM LEGEND

IN MAKING AN INVESTMENT DECISION INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE PARTNERSHIP AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED.  THESE SECURITIES HAVE NOT BEEN RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.  THE LIMITED PARTNERSHIP INTERESTS ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND THE APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM.  PROSPECTIVE INVESTORS SHOULD BE AWARE THAT THEY WILL BE REQUIRED TO BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

v

GL025822

# TABLE OF CONTENTS

SUMMARY OF OFFERING ................................................................................. 1
ACCESS TO INFORMATION ............................................................................ 8
SUBSCRIPTIONS-PROCEDURES AND SUITABILITY ................................. 8
ELIGIBLE SUBSCRIBERS .............................................................................. 9
ACCREDITED INVESTORS ............................................................................ 9
THE GENERAL PARTNER ............................................................................ 10
INVESTMENT PHILOSOPHY AND OBJECTIVES ..................................... 10
USE OF PROCEEDS ....................................................................................... 13
CERTAIN RISK FACTORS ........................................................................... 13
CONFLICTS OF INTEREST .......................................................................... 18
REGULATORY MATTERS ............................................................................ 18
CERTAIN U.S. FEDERAL INCOME TAX CONSIDERATIONS .................. 19
TAX ASPECTS ............................................................................................... 19
FISCAL YEAR ............................................................................................... 22
ERISA CONSIDERATIONS ........................................................................... 22
OUTLINE OF SELECTED ITEMS IN THE LIMITED PARTNERSHIP AGREEMENT ...................... 24
LIMITATIONS ON TRANSFERABILITY ..................................................... 31
FINANCIAL STATEMENTS .......................................................................... 31
LITIGATION ................................................................................................... 31
ACCOUNTING ............................................................................................... 32
ADDITIONAL INFORMATION ..................................................................... 32

**Exhibit A – Subscription Agreement**

**Exhibit B – Limited Partnership Agreement**

GL025823

THIS SUMMARY OF CERTAIN PROVISIONS OF THE CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM (THE "MEMORANDUM") IS INTENDED ONLY FOR GENERAL REFERENCE. THIS MEMORANDUM, THE LIMITED PARTNERSHIP AGREEMENT AND OTHER DOCUMENTS ATTACHED HERETO SHOULD BE READ AND UNDERSTOOD IN THEIR ENTIRETY BY EACH PROSPECTIVE INVESTOR.

AN INVESTMENT IN BANYON INCOME FUND, LP'S LIMITED PARTNERSHIP INTERESTS ARE SUITABLE ONLY FOR SOPHISTICATED INVESTORS FOR WHOM SUCH AN INVESTMENT DOES NOT CONSTITUTE A COMPLETE INVESTMENT PROGRAM AND WHO FULLY UNDERSTAND AND ARE ABLE TO ASSUME THE RISKS INVOLVED IN BANYON INCOME FUND, LP'S INVESTMENT PROGRAM. (SEE "CERTAIN RISK FACTORS" AND "LIMITATIONS ON TRANSFERABILITY; SUITABILITY REQUIREMENTS"). BANYON INCOME FUND, LP'S INVESTMENT PRACTICES, BY THEIR NATURE, MAY BE CONSIDERED TO INVOLVE A SUBSTANTIAL DEGREE OF RISK.

TAX-EXEMPT ORGANIZATIONS CONSIDERING AN INVESTMENT IN THE LIMITED PARTNERSHIP INTERESTS SHOULD CONSULT WITH THEIR OWN ADVISORS AS TO THE TAX IMPACT AND OTHER EFFECTS AN INVESTMENT IN BANYON INCOME FUND, LP MAY HAVE UPON THEM. (SEE "TAX ASPECTS")

### SUMMARY OF OFFERING

**THE PARTNERSHIP:**

Banyon Income Fund, LP, a Delaware limited partnership (the "Partnership"), is offering limited partnership interests ("Interests") in the Partnership to a limited number of qualified investors.

Banyon 1030-32, LLC, a Nevada limited liability company, shall serve as the general partner of the Partnership (the "General Partner").

The Interests being offered hereby have not been registered under the Securities Act of 1933, as amended (the "1933 Act"), the securities laws of any state of the United States or the Investment Company Act of 1940, as amended (the "1940 Act").

**INVESTMENT OBJECTIVE:**

The investment objective of the Partnership is to purchase, at a discount, settlements and related periodic revenue stream (the "Purchased Settlements") from individual plaintiffs who have settled their labor and employment related lawsuits or claims, and who would otherwise receive their settlement amounts over a period of time. Prior to purchase by the Partnership, the full settlement amount to be paid on each Purchased Settlement will have been deposited in a trust account established by the plaintiff's attorney for the benefit of the Plaintiff, and the right to receive distributions out of the trust account will be assigned to the Partnership. These settlement amounts are released to the Partnership over time to liquidate the Purchased Settlement.

The Partnership will be continuing a business strategy that the General Partner and its affiliates have been engaged in for approximately 2.5 years.

Please see *Investment Philosophy and Objectives* at page 11.

1

GL025824

**GENERAL PARTNER:**

Banyon 1030-32, LLC, a Nevada limited liability company, is the General Partner of the Partnership. George G. Levin is the managing member of the General Partner (the "Managing Member"). Neither the General Partner, nor its affiliates are presently registered under the Investment Advisers Act of 1940, as amended (the "Advisers Act"), but may so register in the future.

**INITIAL COMMITMENTS, SUBSEQUENT COMMITMENTS:**

The minimum capital commitment required for an initial subscription for Limited Partnership Interests is one million dollars ($1,000,000), or such greater or lesser amount as the General Partner may accept in its sole discretion (the "Initial Commitment"). All subsequent commitments shall be in the minimum amount of one hundred thousand dollars ($100,000), (each a "Subsequent Commitment" and together with the "Initial Commitment", the "Commitments"). Each Limited Partner shall be required to deliver an amount equal to 25% of its Commitment upon delivery of its subscription for such Commitment. The General Partner may, in its absolute discretion, make exceptions for Initial Commitments and Subsequent Commitments. The General Partner may, in its absolute discretion, decline to accept the subscription of any prospective Limited Partner.

**CAPITAL CALLS:**

The General Partner may, at any time that it determines that capital is required to invest in Purchased Settlements, request in writing that the Limited Partners contribute cash to the capital of the Partnership ("Capital Call") up to their Commitment amount (the "Capital Contributions"). All Capital Contributions shall be made after notice from the General Partner (the "Capital Call Notice") of (x) the amount to be contributed by each Limited Partner, and (y) the date on which such contribution is due (the "Due Date"), which date shall not be sooner than fifteen (15) Business Days (as defined below) following receipt of the Capital Call Notice. The amount of cash required to be contributed by each Limited Partner shall be equal to a pro rata share of each Limited Partner's unfunded Commitment. Nothing in this Agreement shall operate to increase any Limited Partner's Commitment, and no Limited Partner shall have any obligation to contribute any amounts in excess of such Partner's aggregate Commitment to the Partnership.

A "Business Day" shall mean any day other than a Saturday, Sunday or a holiday on which national banking associations in the State of Florida are closed.

An opening capital account (the "Opening Capital Account" or the "Capital Account") shall be established for each Partner (whether General or Limited) on the books of the Partnership, upon the first Drawdown, and in accordance with the provisions of Treasury Regulations Section 1.704-1(b)(2)(iv). The General Partner shall also establish such sub-capital accounts (the "Purchased Settlements Sub-Accounts") as it deems necessary in its sole discretion.

The Capital Contributions made upon a Drawdown will first be paid to the Limited Partner's Capital Account and then re-allocated to a Purchased Settlement Sub-Account, which Purchased Settlements Sub-Account shall be allocated specific Purchased

2

GL025825

Settlement(s), such that each Purchased Settlements Sub-Account will not share in the profits or losses attributable to any other Purchased Settlements Sub-Account.

All credits and debits relating to Purchased Settlements shall be based on each Partner's "Partnership Percentage" which, for purposes of the Purchased Settlements Sub-Accounts, shall be determined by dividing the amount debited from each Partner's Capital Account and credited to the Purchased Settlements Sub-Account by the total cost of the Purchased Settlement at the time such Purchased Settlements Sub-Account(s) were created. The Expenses (as defined below) of the Partnership and the General Partner shall be borne by the General Partner.

"Expenses" shall include: Fees and expenses incurred by the General Partner on behalf of the Partnership for office space, utilities, general office expenses and expenses related to the Purchased Settlements. The General Partner will pay on behalf of the Partnership any and all legal, accounting and other professional fees, custodial fees, and bank service fees and any taxes applicable to the Partnership on account of its operations and shall also pay any and all other reasonable expenses related to the management and operation of the Partnership as the General Partner shall determine in its sole discretion. Moreover, the General Partner shall be responsible for all extraordinary expenses incurred on behalf of the Partnership or the General Partner, including, without limitations, all costs associated with the prosecution and/or defense of any litigation involving the Partnership and/or the General Partner.

**PREFERRED RETURN:**

Limited Partners who submit their Commitments prior to the earlier to occur of (a) the Partnership's receipt of Commitments totaling one hundred million dollars ($100,000,000), or (b) July 1, 2009, shall receive a preferred return of fifteen percent (15%) on their Capital Contributions and any Preferred Return which has been credited to the Limited Partner's Capital Account prior to December 31, 2010 (as provided below) until December 31, 2010, and twelve percent (12%) thereafter, and all other Limited Partners shall receive a preferred return of twelve percent (12%) on their Capital Contributions (the "Preferred Return"). The Preferred Return shall accrue annually commencing on the date each such Capital Contribution is deposited with the Partnership. The Preferred Return will be paid at least quarterly by the Partnership as set forth below in "Distribution Waterfall"; provided, however, that on a quarterly basis a Limited Partner may elect in writing to have all or a percentage of each and every distribution of the Preferred Return to that Limited Partner, in accordance with Sub-Paragraph 4.6 of the Limited Partnership Agreement, attached hereto as Exhibit B (the "Partnership Agreement"), credited by the General Partner to such Limited Partner's Capital Account as an additional Capital Contribution in an amount equal to the distribution to reduce the Partner's Remaining Capital Commitment (as defined in the Partnership Agreement) and to increase such Limited Partner's Capital Commitment to the extent such Capital Commitment is fully funded. Such credited Preferred Return amounts will also accrue the Preferred Return. The General Partner will have a claw back obligation to the extent the Limited Partners have not received 100% of their Capital Account balances (together with accrued but unpaid Preferred Return) (the "Claw Back").

3

GL025826

**DISTRIBUTIONS:**

The General Partner shall cause the Partnership to pay the Preferred Return to the Limited Partners at least on a quarterly basis, and in its sole discretion, to make additional distributions that amount to a return of capital at any time in its sole discretion (the "Distributions"). Subject to acceptance by the General Partner, in its sole and absolute discretion, a Limited Partner may elect in writing to have all or a percentage of each and every Distribution credited by the General Partner to such Limited Partner's Capital Account as an additional Capital Contribution to reduce the Partner's Remaining Commitment in an amount equal to the distribution, and to increase such Limited Partner's Capital Commitment to the extent such Limited Partner has no Remaining Capital Commitment.

**DISTRIBUTION WATERFALL:**

Subject to the Limited Partners' right to reinvest their Distributions, the Partnership's (a) Income (as defined below) will first be distributed pro rata to Limited Partners in an amount equal to their Preferred Return, then to the General Partner, and (b) distributions of Capital Proceeds (as defined below) will first be distributed pro rata to Limited Partners as a return of capital, then to the General Partner, subject to the General Partner's obligation to maintain a capital account balance of ten percent (10%) of the aggregate Capital Contributions as of the date of such Distribution.

"Income" shall mean Gross Proceeds (as defined in the Partnership Agreement) representing payments received by the Partnership on a Purchased Settlement in excess of the purchase price of the Purchased Settlement together with related costs, if any.

"Capital Proceeds" shall mean Gross Proceeds representing payments received by the Partnership on a Purchased Settlement equal to the purchase price of the Purchased Settlements, plus related costs, if any.

Upon liquidation, Distributions will first be made pro rata to Limited Partners in an amount equal to their outstanding Capital Account balances (including accrued but unpaid Preferred Return), and the remainder to the General Partner. The General Partner will have a Claw Back obligation to the extent the Limited Partners have not received 100% of their Capital Account balances (together with the accrued but unpaid Preferred Return), which Claw Back is personally guaranteed by George G. Levin, the Managing Member of the General Partner.

**ADMISSION OF NEW**
**LIMITED PARTNERS AND**
**ADDITIONAL CAPITAL COMMITMENTS:**

New Limited Partners or additional Commitments from existing Limited Partners may be accepted on the first day of each calendar quarter, or on such other date(s) and, in each case, as the General Partner may determine.

**WITHDRAWAL OF A**
**LIMITED PARTNER:**

During the first twelve month (12) month period after the date of a Limited Partner's first Capital Contribution (the "Lock-Up Period"), such Limited Partner may not withdraw

4

GL025827

any portion of its Capital Account, except as otherwise may be permitted by the General Partner in its sole discretion.

Subject to the Lock-Up Period described above, and the General Partner's right to limit withdrawals as set forth below, a Limited Partner may request to withdraw all or a portion of its Capital Account, on at least ninety (90) days prior written notice to the General Partner of the date of withdrawal (the "Effective Withdrawal Date").

The General Partner will distribute ninety percent (90%) of the withdrawal request by a Limited Partner, immediately to the extent available from the Limited Partner's Capital Account, and otherwise ratably over the life of all Purchased Settlements in which the Partnership has invested as of the Effective Withdrawal Date (which the General Partner anticipates will be a period of approximately nine (9) to fourteen (14) months) with the unpaid balance continuing to accrue the Preferred Return. The remaining ten percent (10%) balance, together with accrued Preferred Return, shall be distributed within ten (10) business days of receipt by the Partnership of its annual audited financial statements for the year in which the final payment is made.

The General Partner may, in its sole discretion, (a) waive the Lock-Up Period; (b) waive the Limited Partner's obligation to provide ninety (90) days prior written notice of its intention to withdraw capital, and/or (c) elect to pay the withdrawal amount in a lump sum or over a shorter period of time.

The ability of a Limited Partner to withdraw capital is contingent upon, and subject to, (i) the availability of cash and the Partnership otherwise having assets sufficient to meet its investment objectives on and as of the designated withdrawal date; and (ii) the existence of any event, circumstance, or condition, which, in the good faith judgment of the General Partner precludes the Partnership from or renders inadvisable the making of any withdrawal payment under the Partnership Agreement.

## DEFAULTING LIMITED PARTNER:

The failure by any Limited Partner to make, within fifteen (15) Business Days after a Capital Call Notice, payment of any portion of the Capital Contribution required to be contributed by such Limited Partner pursuant to the Capital Call Notice shall constitute an event of default by such Limited Partner "Event of Default". Upon the occurrence of an Event of Default, such defaulting Limited Partner (the "Defaulting Limited Partner") shall be subject to, in the General Partner's sole discretion, any or all of the following provisions:

(a) A Defaulting Limited Partner may be charged an additional fee of 18% on the unpaid balance of any overdue Capital Contributions or other payments, including interest thereon;

(b) Whenever the vote, consent or decision of a Limited Partner or of the Partners is required or permitted pursuant to this Agreement, except as required by the Act, a Defaulting Limited Partner shall not be entitled to participate in such vote or consent; and

(c) The General Partner shall have the right in its sole discretion to take any or all of the following actions: (i) determine that a Defaulting Limited Partner shall forfeit to the non-defaulting Limited Partners all Distributions of Preferred Return that such

5

GL025828

Defaulting Limited Partner would otherwise receive, and/or (ii) assess a twenty-five percent (25%) reduction in the Capital Account balance of the Defaulting Limited Partner; and/or (iii) assess a default fee against the Defaulting Limited Partner in an amount up to twenty-five percent (25%) of the Defaulting Limited Partner's Commitments, and/or (iv) assess a default fee of up to one-hundred percent (100%) of the Distributions of Preferred Return which the Defaulting Limited Partner has previously received, which reversal may be charged, in whole or in part, to the Capital Account of the Defaulting Limited Partner. Any amounts withheld from the Defaulting Limited Partner by the Partnership pursuant to clauses (i) or (ii) above shall be allocated and distributed to the other Limited Partners in proportion to their pro rata percentage interests in the Partnership or, in the case of a Distribution upon liquidation, in proportion to the liquidating Distributions to the Limited Partners.

The General Partner shall also have full power, in its sole discretion, without prejudice to any other rights or remedies that the General Partner or the Partnership may have, including the right to:

(a) Require the Defaulting Limited Partner to sell to the Partnership or to all of the other Partners (other than Defaulting Limited Partners) who wish to purchase, on a pro rata basis based on their respective Commitments, the Defaulting Limited Partner's Interest in the Partnership at a purchase price equal to the lesser of (x) the cost of such Defaulting Limited Partner's interest, or (y) such price as the General Partner determines in its sole discretion of the General Partner, acting in a fair and reasonable manner under the circumstances;

(b) Require the Defaulting Limited Partner to sell its Interest in the Partnership to the General Partner or to a third party or third parties designated by the General Partner (which third party or third parties may be Affiliates of the General Partner or any Limited Partner), at a purchase price equal to the lesser of (x) the cost of such Defaulting Limited Partner's interest, or (y) such price as the General Partner determines in its sole discretion is fair and reasonable under the circumstances; and

(c) To commence legal proceedings against the Defaulting Limited Partner to collect all amounts owed by such Defaulting Limited Partner to the Partnership or any other Person, together with interest thereon at the maximum rate permitted by law from the date of default plus all collection expenses, including attorneys' fees.

**EXPENSES:**

The entire proceeds of this offering will be available for the Partnership's investment program.

The Expenses of the Partnership and the General Partner shall be borne by the General Partner.

6

GL025829

**CARRIED INTEREST
OF THE GENERAL PARTNER:**

The General Partner or its designee shall receive compensation which shall be equal to the Partnership's gross receipts minus the aggregate Distribution of Preferred Return and the return of Capital Contributions.

In the event of a capital withdrawal, the General Partner or its designee may value the Partnership's assets and the Limited Partners' Capital Accounts as of the Withdrawal Date. Any accounting, administrative, legal or other fees incurred as a result of such interval date valuation shall be borne by the General Partner.

**REPORTS:**

Proper books of account of the Partnership shall be kept and prepared on a cash or a tax basis, as the Partnership's auditors may determine, by or under the supervision of the General Partner at the principal place of business of the Partnership. The Limited Partner Representative, (as defined in the Partnership Agreement), or its designees, shall have the right to visit and inspect any of the Partnership's properties, to examine and make abstracts or copies from its books and records, to conduct an audit and analysis of the Purchased Settlements and other assets and to discuss its affairs, finances and accounts with the General Partner and its officers, employees and the Partnership's independent public accountants as often as may reasonably be desired, in each case with commercially reasonable prior written notice, but not less than sixty (60) days, the reasonable costs of which shall be reimbursed by the Partnership. The accounts of the Partnership shall be audited in accordance with Paragraph 8.2 of the Partnership Agreement.

As soon as practicable and in any event within thirty (30) days after the end of each fiscal quarter (including the last fiscal quarter of the Partnership's fiscal year), the General Partner shall deliver to each Limited Partner (i) a balance sheet of the Partnership as at the end of such fiscal quarter and the related statements of operations and cash flows for such fiscal quarter, and for the portion of the Fiscal Year ended at the end of such fiscal quarter, all in reasonable detail and certified by the General Partner as fairly presenting the financial condition and results of operations of the Partnership and as having been prepared on a tax or cash basis, as the Partnership's auditors may determine, applied on a basis consistent with the audited financial statements of the Partnership, subject to changes resulting from audit and normal year-end adjustments and the absence of footnote disclosures; and (ii) a report prepared by a firm of independent certified public accountants satisfactory to a Majority in Interest of the Limited Partners stating that such accounting firm has verified, as of the end of such fiscal quarter, (a) funds on deposit in trust accounts representing proceeds of Purchased Settlements, and (b) documentation confirming the Partnership's right to receive such funds upon disbursement from such trust accounts.

The General Partner shall prepare and mailed to each Limited Partner, as soon as practicable after the close of each fiscal year, but in no event later than one hundred fifty (150) days thereafter: (i) audited financial statements prepared in accordance with GAAP and audited by a firm of independent certified public accountants satisfactory to a Majority in Interest of the Limited Partners; and (ii) any other information necessary to enable such Limited Partner to prepare its individual income tax returns. The first complete audit of the Partnership will occur for the 2009 fiscal year. However, the General Partner shall use its best efforts to have prepared and mailed to each Limited

7

GL025830

Partner, as soon as practicable after the close of the 2009 fiscal year, all information necessary to enable such Limited Partner to prepare its individual income tax returns for the 2009 fiscal year.

**COVENANTS:**

The Partnership and the General Partner have undertaken certain negative and affirmative covenants relating to, among others, debt, liens, transactions with affiliates, the conduct of business and access to the Partnership's records. Please see Article 2 of the Partnership Agreement for additional information.

**PLACEMENT AGENTS:**

The General Partner may enter into arrangements with placement agents to solicit investors in the Partnership, and such arrangements may provide for compensation of the placement agents at the General Partner's expense. A prospective investor solicited by a placement agent will be advised, and asked to acknowledge its understanding of any such arrangement.

## ACCESS TO INFORMATION

The address of the General Partner is 2455 East Sunrise Blvd, Suite PHS, Fort Lauderdale, FL 33304; telephone: (954) 561-9560, facsimile: (954) 561-7560 and e-mail: info@levinent.com. Prospective investors are invited to review any materials available from the General Partner relating to the Partnership, the operations of the Partnership and this offering of Interests. The General Partner will answer all reasonable inquiries from prospective investors related thereto. The General Partner will provide prospective investors with any additional information necessary to verify the accuracy of any representations or information set forth in the Memorandum. Such review is limited by the proprietary and confidential nature of the investment analysis and strategy to be utilized by the General Partner and by the confidentiality of personal information relating to investors.

Due to the financial sophistication of the persons to whom this offering is directed, the Memorandum sets forth certain information material to evaluating the merits of an investment in the Partnership in summary form only. Prospective investors are urged to consult with their own advisors prior to deciding whether to invest in the Partnership.

## SUBSCRIPTIONS-PROCEDURES AND SUITABILITY

A person desiring to invest in Interests is required to accept and adopt the provisions of the Limited Partnership Agreement (a copy of which is annexed hereto as Exhibit B) and satisfy eligibility requirements by:

1. Completing and executing the Subscription Agreement (a copy of which is annexed hereto as Exhibit A) (the "Subscription Agreement");

2. If required by the General Partner, having its purchaser representative complete and execute the Purchaser Representative Questionnaire which forms part of the Subscription Agreement;

3. Remit payment for an amount equal to twenty five percent (25%) of such prospective Limited Partner's Commitment; and

8

GL025831

3.  Delivering all such documents to the General Partner.

Except as provided by the securities laws of certain states, a subscription is irrevocable and may be accepted on behalf of the Partnership upon the countersignature of the General Partner.

The General Partner has the absolute right to reject any subscription which is tendered.  In the event a subscription is rejected all related documents will be returned to the prospective investor.

## ELIGIBLE SUBSCRIBERS

The Interests are being offered pursuant to an exemption from the registration requirements of the 1933 Act provided in Section 4(2) of the 1933 Act and Regulation D promulgated thereunder.

Each Limited Partner acquiring such Interests must represent, by executing the Subscription Agreement, that it is acquiring the Interests for its own account for investment without any present intention to resell, distribute, or in any way transfer or dispose of its Interest in the Partnership and, if the Limited Partner is an individual, the Limited Partner must be at least twenty-one (21) years of age.  In addition, each Limited Partner must represent that he is an "accredited investor" as defined below.

EACH LIMITED PARTNER, BY SIGNING THE SUBSCRIPTION AGREEMENT, WILL AGREE TO BE BOUND BY THE LIMITED PARTNERSHIP AGREEMENT AND AGREES TO INDEMNIFY AND HOLD HARMLESS THE PARTNERSHIP, THE GENERAL PARTNER AND ALL LIMITED PARTNERS FROM AND AGAINST ANY AND ALL LOSS, DAMAGE, OR LIABILITY, INCLUDING REASONABLE ATTORNEYS' FEES THAT THE GENERAL PARTNER, PARTNERSHIP OR ANY OF THE LIMITED PARTNER(S) SUSTAINS OR INCURS, BY REASON OF, OR IN CONNECTION WITH, ANY MISREPRESENTATION OR BREACH OF ANY WARRANTY OR AGREEMENT BY SUCH LIMITED PARTNER UNDER THE SUBSCRIPTION AGREEMENT, THE QUESTIONNAIRE OR ANY OTHER DOCUMENT DELIVERED BY THE LIMITED PARNER TO THE PARTNERSHIP IN CONNECTION WITH ITS INVESTMENT IN THE PARTNERSHIP, THE RESALE OR REDISTRIBUTION OF THE INTERESTS BY SUCH LIMITED PARTNER IN VIOLATION OF THE SECURITIES ACT OR ANY OTHER APPLICABLE FEDERAL OR STATE SECURITIES LAW.

## ACCREDITED INVESTORS

Each prospective Limited Partner will be required to represent that he is an "accredited investor".  In order to qualify as an "accredited investor," a prospective Limited Partner will be required to certify that it comes within any one of the categories of accredited investors set forth in Rule 501(a) of Regulation D promulgated under the Securities Act, including, without limitation, any one of the following:

(i)  any natural person whose individual net worth (or joint net worth with his or her spouse) exceeds one million dollars ($1,000,000) at the time of purchase;

(ii)  any natural person with a yearly gross income above two hundred thousand dollars ($200,000) or joint income with his or her spouse in excess of three hundred thousand dollars ($300,000) in each of the two most recent years and who reasonably expects to reach the same income level in the current year;

(iii)  any entity in which all of the equity owners are accredited investors under (i) or (ii) above;

GL025832

(iv)    an organization described in Section 501(c)(3) of the Code, a corporation, a Massachusetts or similar business trust, or a partnership, in each case not formed for the specific purpose of acquiring the securities being offered, and with total assets in excess of five million dollars ($5,000,000);

(v)    a trust, with total assets in excess of five million dollars ($5,000,000), not formed for the specific purpose of acquiring the Interests, whose purchase is directed by a person who, either alone or with a purchaser representative, has such knowledge and experience in business and financial matters that he is capable, as defined by the 1933 Act, of evaluating the merits and risks of the prospective investment;

(vi)    a bank as defined in Section 3(a)(2) of the Securities Act, acting in its fiduciary capacity as a trustee, or subscribing for the purchase of securities being offered on its own behalf;

(vii)    an employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA") where investment decisions are made by a plan fiduciary, as defined in Section 3(21) of ERISA, which is either a bank, savings and loan association, insurance company or registered investment advisor, or has total assets in excess of five million dollars ($5,000,000), or is a self-directed plan, with investment decisions made solely by persons that are accredited investors as defined under the Securities Act; or

(viii)    an individual retirement account established in the name(s) of a person or persons who is or are accredited investors.

## THE GENERAL PARTNER

Mr. George G. Levin is the Managing Member of the General Partner. The biography of the Managing Member is set forth below.

Mr. Levin has served as Manager of the Banyon group of entities which were formed in 2006 to penetrate the confidential settlement marketplace. In this capacity, Mr. Levin has acted as the placement source for outside funding entities as well as the coordinator of all settlement purchasing activities. He directs a small staff of key employees handling documentation, investor relations, disbursements and settlement collections. The General Partner believes that Mr. Levin's entrepreneurial background gives him unique insight into running a multi-faceted, fast paced business which requires a multi-disciplinary approach involving law, accounting, and transactional experience. In the past, Mr. Levin was responsible for resurrecting Thinking Machines Corporation and directing its sale to Oracle Corporation in June 1999. In the 1990's, Mr. Levin also led the investment in the takeover of Otto Gerdau, a large exotic-products trading company which was headquartered on Wall Street. Since the 1970's Mr. Levin has successfully invested in real estate and private equities. His real estate portfolio has included commercial real estate in West Palm Beach and Miami; hotels in Palm Beach and Atlantic City (New Jersey); retail centers in South Miami, Pompano Beach, and West Palm Beach; and numerous parcels of undeveloped acreage; and currently includes undeveloped properties in New York, North Carolina, West Virginia and Florida, including farm properties, timber properties, manufactured housing parks, hotels condominiums, and retail/office sites.

In 1999, Classic Motor Carriages, an entity owned by Mr. Levin, settled certain actions brought by the State of Florida and United States related to consumer claims. Please see *Litigation* on page 31 for further information.

## INVESTMENT PHILOSOPHY AND OBJECTIVES

The Partnership will endeavor to provide the Limited Partners with an alternative asset investment focused on a particular aspect of the specialty legal finance industry. The Partnership will buy Purchased Settlements from individual plaintiffs who have settled their non-tort labor and employment related

10

GL025833

lawsuits or claims, and who would otherwise receive their settlement amounts over a period of time. The full settlement amount with respect to each Purchased Settlement will have been deposited in a trust account, established by the plaintiff's attorney for the benefit of the plaintiff, prior to a purchase by the Partnership and the Partnership will receive an assignment of the right to receive payments out of the trust account. These settlement amounts are released to the Partnership over time to liquidate the Purchased Settlement. The purchase price for the Purchased Settlement will represent a discount from the aggregate amount of payments to be received, typically 15% to 30% and the amount of the discount will represent the Partnership's gross income on the transaction.

The Partnership will focus on lawsuits and claims which are, by their nature, ones that former defendant employers would like kept confidential. The settlement agreements typically provide for the payment of full settlement amounts to the trust account established by the plaintiff's attorney for the benefit of the plaintiff, and the periodic payment from such trust account to the plaintiff over a specified number of months, generally ranging from four (4) to twenty-four (24) months. In the event the plaintiff breaches the confidentiality provisions of the settlement agreement, the defendant has the right to seek the damages in an amount which may exceed the settlement amount. The plaintiff's attorney will generally refer a plaintiff to the Partnership if the plaintiff indicates that they have an immediate and urgent need for access to a substantial portion of the settlement proceeds. The plaintiff's attorney makes this referral simply as an accommodation to its clients.

In each case the Partnership will analyze cash flow and cost and negotiate a discount with the plaintiff that will provide sufficient yield to the Partnership to permit the Partnership to provide the return of the Capital Contribution and the payment of the Preferred Return; however, no assurance can be given that the Partnership will achieve the foregoing objective.

## The General Partner

The Partnership will rely on the General Partner's existing relationships as a source of Purchased Settlements. The General Partner is in the business of buying non-tort labor and employment settlements from plaintiffs which are not identified but who are represented by a Florida law firm with a substantial practice representing plaintiffs in labor and employment cases, including negotiating and managing settlements in cases referred to it by other counsel (the "Managing Law Firm"). The General Partner may seek to identify other law firms from which to purchase the Purchased Settlements.

As of March 31, 2009, the General Partner and its affiliates have achieved the following financial milestones, attributable to purchases of Purchased Settlements, since its inception in December 2006. The total face value of settlements that have been purchased exceeded $1 billion – almost half that sum has been repaid, with tax-based earnings of a little less than $100 million. The average purchase price is approximately $1.9 million; the average settlement is $3 million (after legal fees have been deducted).

The General Partner and its affiliates have obtained Purchased Settlements having a total value of $ $1,090,020,808.35. The total gross purchase price for the Purchased Settlements was $656,823,968.38.

From the funds which represent the total Purchased Settlements, the General Partner and its affiliates have collected, as of 3/31/2009 a gross amount of $531,159,770.75and have receivables to be collected in a gross amount of $558,861,037.60.

| | |
|---|---|
| PURCHASES GROSS | 656,823,968.38 |
| DISCOUNT GROSS | 433,196,839.97 |
| TOTAL SETTLEMENTS | 1,090,020,808.35 |
| COLLECTIONS GROSS | 531,159,770.75 |
| NET PURCHASES | 220,648,156.00 |

11

GL025834

| | |
|---|---|
| NET DISCOUNT | 338,212,881.60 |
| EARNINGS | 98,611,394.36 |
| RECEIVABLES | 558,861,037.60 |

Funding for these activities has come from credit facilities with institutional "hedge fund" lenders as well as the personal capital of Mr. Levin. The Partnership is being formed to provide an ongoing platform for funding the purchase of settlements that provides an attractive return to investors on more attractive net terms to the General Partner due to the elimination of the hedge fund level of management and related fees.

Although the initial flow of business in early 2007 were rather small, once a structure of formal documentation was put in place and a relationship established with the Managing Law Firm, the General Partner was able to achieve a large ramp up in business volume. Today's volumes have stabilized at approximately $60,000,000-$75,000,000 in funded business per month.

The General Partner and its affiliates have agreed that they will only act through the Partnership for the purchase of Purchased Settlements where the individual settlement meets the Partnership purchasing criteria and the Partnership has available capital to purchase the settlement.

The General Partner's Audited Financials are attached hereto as Appendix A.

**Competitive Analysis**

Labor and employment settlement financing has largely been ignored because it is a niche market and lacks visibility due to confidentiality issues. The competitive landscape for legal funding is predominately comprised of smaller to mid-sized, "mom and pop" operators; with less than a handful of large scale competitors. The most significant of the large scale competitors are Oasis Legal Finance, Magnolia Legal funding, Lawcash, and Peachtree Pre-settlement funding which focus on personal injury, workers compensation claims, and liability settlements.

It is the Partnership's belief that this is a largely un-tapped market.

**The Process**

The essential steps in the process include:
- Execution of the agency agreement (which is the engagement/retainer agreement between plaintiff's attorney and plaintiff);
- Execution of the settlement (and confidentiality) agreement by the plaintiff and defendant;
- Creation of the trust account by the plaintiff's attorney for the plaintiff;
- Correspondence between plaintiff's counsel and the Partnership;
- Wire transfer of settlement proceeds the trust account established by the plaintiff's attorney for the benefit of the plaintiff;
- Plaintiff's sale/assignment of the settlement and related revenue stream to the Partnership;
- Acknowledgement of the sale/assignment by the Trustee (who is generally the plaintiff's attorney);
- Issuance of the Lump Sum Check to the Plaintiff from the Partnership;
- Verification of Disbursements by Independent Third Party, which is a registered investment advisor who is retained by the Partnership to review the case files, including un-redacted originals of all the documents, receipt of bank wire from defendant into the plaintiff's attorney's trust account, payment of purchase price to plaintiff, and bank balances; and
- Collection of payments by the Partnership per the Settlement Agreement Schedule.

GL025835

**Risk Management**

The Partnership's intended goal is to minimize risk while providing Limited Partners with the Preferred Return.

The Partnership anticipates that it will employ policies and procedures to attempt to mitigate risk, which include, but are not limited to ensuring that:

- 100% of the Purchased Settlements will be funded by the settlement proceeds which have been wired to and received by the trust account of the plaintiff's attorney which is established for the plaintiff.

- Disbursements from the trust account will require two signatures, including one by a member of the General Partner.

One of the largest risks the Partnership faces as a result of its investment strategy is the breach by plaintiff's (from whom the Partnership has purchased a Purchased Settlement) of their Settlement Agreements. If this occurs the defendant may commence a lawsuit against the plaintiff. Such a lawsuit would require the Defendant to put into the public domain the settlement agreement. The General Partner's experience has been that in those limited instances where a plaintiff has violated the confidentiality agreement, the defendant generally elects to not pursue an action. However, in the event that a defendant elects to pursue an action, a defendant could claim damages which may be in excess of the settlement amount. Further, a defendant may also seek to have distributions from the plaintiff's attorneys' trust account restrained. The settlement documents do not generally contain a limitation on the defendant's damages.

## USE OF PROCEEDS

The entire proceeds from the sale of Interests and from the General Partner's Capital Contribution, net of the costs and expenses of this Offering will be available for the Partnership's investment program. The Expenses of the Partnership and the General Partner shall be borne by the General Partner.

## CERTAIN RISK FACTORS

THE FOLLOWING LIST OF RISK FACTORS DOES NOT PURPORT TO BE A COMPLETE EXPLANATION OF THE RISKS INVOLVED IN AN INVESTMENT IN THE INTERSTS. POTENTIAL INVESTORS SHOULD READ THE ENTIRE MEMORANDUM BEFORE DETERMINING TO INVEST IN THE PARTNERSHIP AND SHOULD SEEK INDEPENDENT ADVISE AS TO WHETHER TO INVEST IN THE PARTNERSHIP.

*An investment in the Partnership involves a substantial degree of risk. There can be no assurance that the Partnership's investment objectives will be achieved. As a result, the purchase of Interests in the Partnership should be considered only by persons who can afford a loss of their entire investment. Prospective Limited Partners should consider, among other risks, the following factors in determining whether an investment in the Partnership is a suitable investment:*

General.

The purchase of labor and employment settlements and related periodic revenue stream will generally involve significant risks. No assurance can be given that Limited Partners will realize a profit on their investment. Moreover, each Limited Partner may lose some or all of its investment. Returns may

GL025836

fluctuate from period to period. Accordingly, Limited Partners should understand that the results of a particular period will not necessarily be indicative of results in future periods.

No Assurance of Investment Return.

No assurance can be provided that the Partnership's investments will be successful or that the investment objectives of the Partnership will be realized, that any benefits or advantages to Limited Partners suggested or implied in this Memorandum will be available or accomplished, or that any historical successes of General Partner, its principals or any other person or entity identified herein will be repeated with respect to the Partnership or will confer any benefits on the Partnership or prospective investors. Past investment performance General Partner and its principals their prior employers or entities controlled by each of them provides no indication of future results. There can be no assurance that the Limited Partners will receive a return of their capital contributions or the Preferred Return.

No Capital Appreciation.

The Limited Partners will not experience capital appreciation as a result of their investment in the Interests. The Limited Partners will be entitled to a Preferred Return irrespective of the profitability of the Partnership.

Legal Action.

Although the General Partner has received legal opinions relating to the legality of the purchases of plaintiff settlements (similar to those contemplated by the Partnership) under Florida and Nevada law, the Partnership has not sought the independent advice of counsel with respect to the legality of the Purchased Settlements contemplated hereby. As a result, there can be no assurance that the Partnership's activities will not be challenged in one or more jurisdictions in which the Partnership seeks to do business, although the General Partner will have its counsel perform a survey of all applicable states and will only make purchases in states where such purchases are legal.

Federal Deposit Insurance Corporation Protection.

The amounts in the attorney trust accounts generally exceed the Federal Deposit Insurance Corporation ("FDIC") protection maximum. In November 2008, the FDIC temporarily extended the Temporary Liquidity Guarantee Program to cover interest on lawyer's trust accounts ("IOLTA"). An IOLTA is an interest-bearing account maintained by a lawyer or law firm for clients. The interest from these accounts is not paid to the law firm or its clients, but rather is used to support law-related public service programs. Upon the expiration of the Temporary Liquidity Guarantee Program, in the event that the banking institution which maintain the attorney trust account fails, the Partnership may be unable to recoup the value of the attorney trust account and the Partnership's business may be irreparably harmed.

Risk of Loss.

An investment in the Interests creates a risk of loss of capital and is designed for persons who are able to bear such risk. Although the General Partner believes that the Partnership's investment strategy moderates the risks associated with an investment in the Interests, neither the Partnership nor the General Partner can give any assurance in this regard.

Competition for Investments.

The Partnership may compete for investment opportunities with other investors, some of whom may have greater resources than the Partnership. Although the Partnership does not know of any direct competitors

14

as of the date hereof, there may be intense competition for investments in labor and employment settlements in the future, and such competition may result in less favorable investment terms than would otherwise be the case. There can be no assurance that the investments ultimately acquired by the Partnership will meet all of the investment objectives of the Partnership, or that the Partnership will be able to invest all amounts committed to the Partnership.

No Lien Filings.

The Partnership does not intend to file UCC-1 financing statements against the Purchased Settlements. UCC-1 financing statements are generally filed to perfect a security interest in favor of the purchaser. The General Partner has received legal opinions from law firms in the States of Florida and Nevada, which indicate that filing UCC-1 financing statements are not required under the laws of Florida or Nevada because the interests in the plaintiff settlements (similar to those contemplated by the Partnership) perfect automatically upon execution of the transfer documents. The Partnership has not sought the independent advice of counsel with respect to the automatic perfection of the Purchased Settlements. As a result, there can be no assurance that the Partnership's interests in the Purchased Settlements are perfected and that it will defeat a claim of a subsequent creditor.

Risks Associated with Confidentiality.

The settlements in labor and employment actions are generally contingent on the plaintiff entering and adhering to a confidentiality agreement. In the event the plaintiff breaches the confidentiality agreement, the defendant may seek to obtain damages, including, but not limited to, recovery of the settlement amount, and to have distributions from the plaintiff's attorneys trust account suspended. If this occurs, the Partnership may be unable to recoup the value of the trust account established by the plaintiff's attorney and/or may become liable for any amounts received from such trust account.

Redemption.

Although a Limited Partner may redeem all or a portion of its Capital Account at any time (upon ninety (90) days notice), after the expiration of the Lock-Up Period, the General Partner will pay out such redemption ratably over the life of the Purchased Settlements in which the Partnership has invested as of the Effective Withdrawal Date. The General Partner anticipates that ninety percent (90%) of the redemption amount will be paid within nine (9) to fourteen (14) months. The remaining ten percent (10%) will be paid within ten (10) Business Days of receipt by the Partnership of its annual audited financial statements for the year in which the final payment is made.

Lack of Diversification.

For the near term, the Partnership will only receive notification of plaintiffs who have indicated that they have an immediate and urgent need for access to a substantial portion of the settlement proceeds from the Managing Law Firm.  In the event the Managing Law Firm stops notifying the Partnership of such plaintiffs for any reason, the business prospects of the Partnership will suffer.

No Market for Interests; Restrictions on Transferability of Interests.

An investment in the Partnership must be considered an illiquid investment that involves a high degree of risk. The Interests purchased by investors have not been registered under the 1933 Act, or the securities laws of any state or other jurisdiction, and cannot be resold unless they are subsequently registered under the 1933 Act and other applicable securities laws or an exemption from registration is available. It is not contemplated that registration of the Interests under the 1933 Act or other securities laws will ever be made effective. No public market for Interests is expected to develop, and there are substantial additional

GL025838

restrictions in the Partnership Agreement on the ability of a Limited Partner to transfer his or her Interests in the Partnership. In particular, the transfer of Interests will be subject to the consent of the General Partner, which consent may be given or refused in its sole discretion, and no such transfer will be effective prior to such consent. A purchase of Interests in the Partnership should therefore be considered only by persons financially able to make or maintain their investment and who can afford a loss of all or a substantial part of such investment. Limited Partners may not be able to liquidate their Interests prior to the termination of the Partnership and must be prepared to bear the risks of owning Interests for an extended period of time.

Limited Liquidity for Partnership's Investments.

All, of the Partnership's assets will from time to time be invested in instruments or obligations for which no market exists and/or which are restricted as to their transferability under federal or state securities laws in the United States and elsewhere. This may require the Partnership to postpone redemptions at certain times. In addition, because of the absence of any trading market for the Purchased Settlements, the Partnership may take longer to liquidate these positions than would be the case for publicly traded securities.

Limitation of Liability and Indemnification of General Partner.

The General Partner shall not be liable to the Partnership for any action or inaction in connection with the business of the Partnership unless such action or inaction constitutes willful misconduct or gross negligence. The Partnership (but not the Limited Partners individually) shall indemnify the General Partner and its managers, members, partners, officers, directors and employees from any loss, damage or expense incurred by such persons relating to the business of the Partnership, provided that such indemnity will not extend to conduct which constitutes bad faith, fraud, willful misconduct or gross negligence.

General Economic and Other Conditions.

The business of the Partnership and its affiliates may be adversely affected from time to time by such matters as changes in general economic, industrial, political, and legal conditions; changes in tax laws, and the laws of the states in which the Partnership conducts business or in which the Purchased Settlements originate.

Defaults by Limited Partners.

The Partnership is dependent on timely receiving cash Capital Contributions from its Limited Partners. The default of any Limited Partner in making a timely Capital Contribution in connection with a Capital Call could represent a substantial risk to the viability of the Partnership. Further, upon the occurrence of a default, the General Partner may require all of the non-defaulting Partners to increase their Capital Contributions up to an aggregate amount equal to the Capital Contribution of the Defaulting Limited Partner on which it defaulted; provided that no Limited Partner will be required to fund amounts in excess of its Remaining Capital Commitment (as such term is defined in the Partnership Agreement).

Lack of Regulatory Oversight.

While the Partnership may be considered similar to an investment company, it is not presently registered, and does not intend to so register in the future, under the 1940 Act, as amended. It presently relies upon an exemption available to privately offered investment companies. In addition, the General Partner is not registered as an investment advisor under the Advisers Act.

GL025839

Lack of Operating History.

The Partnership is a newly formed entity and has no operating history upon which investors can evaluate the likely performance of the Partnership.

Investment Restrictions on Certain Limited Partners.

Certain prospective Limited Partners (such as tax-exempt foundations and employee benefit plans) may be subject to federal and state laws, rules and regulations which may regulate their participation in the Partnership, or their engaging directly, or indirectly through an investment in the Partnership, in investment strategies of the types which the Partnership may utilize from time to time. Such prospective Limited Partners should consult with their professional advisors prior to making an investment in the Partnership.

Tax Risks and Payment of Taxes.

There are a number of tax risks associated with an investment in the Partnership. In particular, Limited Partners should be aware that they will be taxed annually on the Partnership's income and realized gains, if any, whether or not they receive any Distributions from the Partnership and whether or not their investment has increased in value.

Because of the nature of the Partnership's investments, the ability of the General Partner to provide financial and tax information to Limited Partners will depend upon the receipt, by the Partnership, of timely information from unaffiliated third parties. In light of this circumstance, Limited Partners may be required to file for extensions with various federal and state taxing authorities.

Audit Risks.

An audit of a tax return of the Partnership for any given year might result in an adjustment to a Limited Partner's tax liability for the year in question. Furthermore, such an audit could result in the adjustment of items not related to the Partnership as well as items related to the Partnership. The cost of an audit, if any, at the Partnership level will be borne by the Partnership. However, the cost of any resulting audits of a Limited Partner will be borne solely by the affected Limited Partner.

Delays in Providing Tax Information.

Due to the nature of the Partnership's investments, the ability to provide information necessary to enable Limited Partners to prepare their individual tax returns will depend upon the receipt, by the Partnership, of timely information in certain cases, from unaffiliated third parties. Therefore, Limited Partners may be required to file for extensions with various federal and state taxing authorities.

Personal Trading by the General Partner.

Although the General Partner will not purchase Purchased Settlements which meet the Partnership's criteria for investment and for which the Partnership has adequate capital to invest in; the General Partner and its Managing Member, principals and affiliates may acquire settlements and other similar type investments for their own accounts when those conditions do not exist. In these instances, they may use investment methods that are similar to, substantially different from, or more profitable than the methods used by them to direct the Partnership's account.

GL025840

Other Activities of the General Partner.

The Managing Member and other principals of the General Partner will devote such time to manage the Partnership as they, in their sole discretion, deem necessary. Any members of the General Partner may and do invest in, have investment responsibilities for, render investment advice to or perform other services, which are similar to the services they provide hereunder. As a result, the General Partner, its principal(s), and/or affiliate(s) may have conflicts of interest in allocating their time and activity among the Partnership and other entities.

## CONFLICTS OF INTEREST

Investors should be aware that there will be occasions when the General Partner and its affiliates may encounter potential conflicts of interest in connection with the Partnership as set forth above in "Certain Risk Factors – Personal Trading by the General Partner" and "Certain Risk Factors – Other Activities of the General Partner". By acquiring an Interest in the Partnership, each Limited Partner will be deemed to have acknowledged the existence of any such actual or potential conflicts of interest and to have waived any claim with respect to any liability arising from the existence of any such conflict of interest.

The General Partner, and/or its Affiliates, shall not buy Purchased Settlements, which meet the Partnership's criteria for investment and for which the Partnership has adequate capital to invest in, for their own accounts. In the event that the General Partner and/or its Affiliates does buy Purchased Settlements, which meet the Partnership's criteria for investment and for which the Partnership has adequate capital to invest in, then each Limited Partner will not be deemed to have acknowledged the existence of any such actual or potential conflicts of interest and will not have waived any claim with respect to any liability arising from the existence of any such conflict of interest.

Ballamor Capital Management, Inc., an investment adviser registered with the Securities and Exchange Commission, that provides investment advisory services primarily to high net worth individuals, has participated in the structuring of the Partnership and intends to recommend to certain of its clients that they become Limited Partners. Ballamor will receive no compensation for its participation or investment recommendation. However, George Levin has an agreement in principle with Ballamor and its principal, Barry R. Bekkedam, with respect to an equity investment in Ballamor by Mr. Levin and a loan to Mr. Bekkedam, the final terms of which have not been determined. These transactions are in no way contingent on the success of the Offering or Ballamor's participation therein.

## REGULATORY MATTERS

The purchase of labor and employment settlements and related periodic revenue stream is not generally regulated, except to the extent that attorneys are regulated in what activities they may undertake with regard to such advances.

The Partnership will not be subject to regulation by the Securities and Exchange Commission (the "SEC"), national securities exchanges or the Federal Reserve. However, the SEC regularly reviews the practices and procedures of the securities industry, and the market place in general and from time to time revises rules and regulations pertaining thereto. The exchanges engage in similar reviews and at times revise their rules. There can be no assurance that any rules and regulations promulgated by the SEC, the Federal Reserve Board, the various securities exchanges or statutory amendments to the federal or state securities laws or other governmental bodies, foreign or domestic, will not adversely impact the Partnership or that Congress or legislatures in any of the states may not promulgate rules or legislation which may adversely impact the Partnership.

18

GL025841

## CERTAIN U.S. FEDERAL INCOME TAX CONSIDERATIONS

The discussion in this section "Certain U.S. Federal Income Tax Considerations" was not intended to be and cannot be used by any person for the purpose of avoiding tax penalties that may be imposed on such person. This discussion was written to support the promotion or marketing of investments in the Partnership. Any person considering an investment in the Partnership should seek advice based on such person's own circumstances from an independent tax advisor.

The following is a summary discussion of certain U.S. federal income tax considerations that may be relevant to an investment in the Partnership by Limited Partners.. This discussion is necessarily general in nature, and is not intended to address all of the U.S. federal income tax consequences that may be relevant to a Limited Partner in light of the Limited Partner's particular tax situation (such as a Limited Partner subject to the alternative minimum tax) or to certain classes of Limited Partners subject to special treatment under the U.S. federal income tax laws (including, among others, insurance companies, tax-exempt entities, regulated investment companies, partnerships and other pass-through entities and their partners or members, dealers and other investors that do not own their Interests as capital assets, persons who are not citizens or residents of the United States, and banks, thrifts and other financial institutions). In addition, this summary does not consider the effect of any foreign, state, local or other tax law, or any U.S. federal tax considerations other than income tax considerations (thus, for example, this discussion does not address estate or gift tax considerations) that may be applicable to particular Limited Partners. The actual tax and financial consequences of the purchase and ownership of Interests in the Partnership will vary depending upon the investor's circumstances.

This discussion is based on the Internal Revenue Code of 1986, as amended (the "Code"), judicial decisions and administrative regulations, rulings and practices now in effect, all of which are subject to change or different interpretations. Any changes in any of the forgoing could apply retroactively to the Partnership and/or the Limited Partners. Moreover, no assurance can be given that the tax consequences described herein of an investment in the Partnership will be accepted by the Internal Revenue Service ("IRS") or, if challenged, by a court. The Partnership does not intend to seek any rulings from the IRS as to matters discussed herein and the Partnership will not obtain an opinion of counsel on the U.S. federal income tax considerations of an investment in the Partnership or on the status of the Partnership as a partnership for purposes of federal income tax law.

This discussion does not constitute tax advice and is not a substitute for tax planning. Prospective Limited Partners must consult with and rely on their own professional tax advisors as to the tax consequences of their investment in the Partnership.

## TAX ASPECTS

Partnership Status

Under current U.S. Treasury regulations, a domestic entity that has two or more members and that is not organized as a corporation under U.S. federal or state law will generally be classified as a partnership for U.S. federal income tax purposes unless it elects to be treated as a corporation. Subject to the discussion of "publicly traded partnerships" set forth below, the Partnership expects to be treated as a partnership for U.S. federal income tax purposes and does not expect to make any election to the contrary. The

19

GL025842

classification of an entity as a partnership for U.S. federal income tax purposes may not be determinative for state, local or non-U.S. tax purposes.

An entity that would otherwise be classified as a partnership for U.S. federal income tax purposes may nonetheless be taxable as a corporation if it is a "publicly traded partnership." The General Partner intends to operate the Partnership so that it will not be treated as a publicly traded partnership. The Partnership intends to obtain and rely on appropriate representations and undertakings from each Limited Partner in order to assure that the Partnership is not treated as a publicly traded partnership. If the Partnership were determined to be a corporation for tax purposes, it would be taxed on its earnings at corporate tax rates and any Distributions to the Limited Partners would be taxable as dividends to the Limited Partners to the extent of the earnings and profits of the Partnership. The General Partner believes that the Partnership will be treated as a partnership and not a corporation for federal income tax purposes.

An organization that is classified as a partnership for U.S. federal income tax purposes is not subject to U.S. federal income tax itself, although it must file an annual information return. The partners of a partnership include as income on their own tax returns their shares of the partnership's taxable income (or, if they have sufficient basis in their partnership interests, and subject to other limitations discussed below, deduct on their own tax returns their share of the partnership's losses).  The partners of a partnership are taxable on their shares of the partnership's taxable income regardless of whether their shares of that income (or any portion thereof) are actually distributed to them.

Filing of Tax Returns

A principal of the General Partner will be the "Tax Matters Partner" and will determine, among other things, how to report the Partnership items of income and deduction, as well as any other items, on the Partnership's tax returns. All Limited Partners will be required under the Code to treat the Partnership items consistently on their own returns, unless they file a statement with the Internal Revenue Service disclosing the inconsistency.  In the event the income tax returns of the Partnership are audited, the Partnership's income and deductions will generally be determined at the Partnership level in a single proceeding rather than by individual audits of the Limited Partners.  The Tax Matters Partner will have considerable authority to make decisions affecting the tax treatment and procedural rights of all of the Limited Partners.  In addition, the Tax Matters will have the right, on behalf of all of the Limited Partners, to extend the statute of limitations relating to the Limited Partners' tax liability with respect to Partnership items.

The Partnership will file an annual federal information tax return.  Following the end of each fiscal year of the Partnership, each Limited Partner will be sent a report (on Schedule K-1) setting forth the Limited Partner's share for tax purposes of items of the Partnership's income and deductions for the year.  (See the discussion of whether the Partnership will be treated as being engaged in a trade or business, below, under *Partnership Trade or Business Status*).

Due to the nature of the Partnership's activities, the ability to provide Limited Partners with Schedule K-1's will depend upon the receipt by the Partnership of timely information, in some cases from unaffiliated third parties. Therefore, Limited Partners may be required to file with federal, and with their respective state, taxing authorities' requests for extensions of time in which to file appropriate returns.

Allocation for Tax and Related Purposes.

All allocations of Partnership items for tax purposes shall be made in accordance with the Limited Partnership Agreement and pursuant to the principles of the Code and in conformity with Treasury regulations promulgated there under or the successor provisions to any section or regulation.

GL025843

In the event a Limited Partner withdraws all of its Capital Account, the General Partner may, in its sole discretion, (a) make a special allocation to said Limited Partner for Federal income tax purposes of the capital gains, if any, realized by the Partnership in such a manner as will reduce the amount, if any, by which such Limited Partner's Capital Account exceeds its Federal income tax basis in its interest in the Partnership before such allocation or (b) make a special allocation relative to said Limited Partner for Federal income tax purposes of the capital losses, if any, realized by the Partnership in such a manner as will reduce the amount, if any, by which its Federal income tax basis in its interest in the Partnership before such allocation exceeds such Limited Partner's Capital Account, as applicable.

Partnership Trade or Business Status.

If the Partnership is deemed to be engaged in a trade or business for U.S. federal income tax purposes, a Limited Partner will take into account its share of the Partnership's income and deductions as part of its share of the Partnership's ordinary business income or loss. Such Limited Partner will include its share of the Partnership's ordinary business income as income on its own tax return. A Limited Partner will deduct its share of the Partnership's ordinary business loss subject to limitations, discussed below, relating to the Limited Partner's basis in the Partnership, the amount the Limited Partner has at risk in the Partnership, and the passive loss limitation rules of the Code.

If the Partnership is instead deemed to be engaged in an investment activity, a Limited Partner will include in its income its share of Partnership's items of gross income, but a Limited Partner who is an individual will be able to deduct his share of the Partnership's investment expenses only to the extent that these expenses (together with other miscellaneous itemized deductions of an individual Limited Partner) exceed two percent (2%) of that Limited Partner's adjusted gross income. In addition, such investment expenses will not be deductible in computing the alternative minimum taxable income for purposes of the alternative minimum tax.

Trade or business, as opposed to investment, status is a question of fact and whether the Partnership is deemed to be engaged in a trade or business or in an investment activity will depend on the nature and extent of the Partnership's activity in any taxable year. Until the Partnership commences its activities and is able to determine the nature and extent of those activities, a determination of trade or business, or investment, status cannot be made. If the Partnership is regularly engaged in the activity of purchasing and administering structured settlements, then it is likely to be considered as engaged in a trade or business. If its involvement in purchasing and administering settlements is limited and occasional, then it is likely to be determined to be engaged in an investment activity.

The resolution of the status of the Partnership's activity as a trade or business, as opposed to an investment, activity will largely be based on an analysis of facts that are applied in assessing such status are sometimes subjective, there can be no assurance that the position eventually taken by the Partnership concerning its status will be accepted by the IRS or, if challenged by the IRS, by the courts.

Limitations on Deducting Losses – Basis.

In the event that the Partnership is deemed to be engaged in a trade or business and suffers losses, the ability of a Limited Partner to claim its share of such losses on its tax return will be limited to the amount of its basis in the partnership. In the case of the Partnership the basis of a Limited Partner is likely to be the amount of the Limited Partner's contribution to the Partnership, increased by the Limited Partner's distributive share of the Partnership's taxable income and decreased (but not below zero) by (i) the amount of any cash distributed to the Limited Partner and (ii) the Limited Partner's distributive share of any Partnership losses.

GL025844

<u>Limitation on Deducting Losses – At Risk Rules.</u>

In the event that the Partnership is deemed to be engaged in a trade or business and suffers losses, the ability of an individual Limited Partner (and C corporations classified as personal holding companies, as defined in the Code) to claim his share of such losses on his tax return will be limited to the amount that that Limited Partner is at-risk with respect to the Partnership. In general, a Limited Partner will be considered "at risk" only for the sum of (i) the amount of money contributed by the Limited Partner to the Partnership; (ii) amounts borrowed for use in the Partnership for which the Limited Partner is personally liable; and (iii) the amount by which the Limited Partners' cumulative share of Partnership taxable income exceeds the sum of the total cash distributions received by the Limited Partner and the Limited Partner's share of Partnership losses.

<u>Passive Income and Loss.</u>

In the event that the Partnership is deemed to be engaged in a trade or business, the share of Partnership income and losses of an individual Limited Partner (as well as of a Limited Partner that is a personal holding company or a personal service company, as defined in the Code) will be considered "passive" income or loss because the limited partners of the Partnership will not materially participate in the Partnership's affairs. Consequently, any Partnership losses allocated to a Limited Partner could be used to offset only "passive income" from other sources (such as income from other partnerships which also constitute a passive investment by the Limited Partner).

<u>Other Taxes.</u>

Prospective investors should also consider the potential state and local tax consequences of an investment in the Partnership. In addition to being taxed in its own state or locality of residence, a Limited Partner may be subject to tax return filing obligations and income, franchise and other taxes in jurisdictions in which the Partnership operates. Further, the Partnership may be subject to state and/or local tax. Potential investors should consult their own tax advisers regarding the state and local tax consequences of an investment in the Partnership.

THE MEMORANDUM DOES NOT SET FORTH COMPLETE INFORMATION RELATING TO THE TAX CONSEQUENCES OF AN INVESTMENT IN THE PARTNERSHIP.

EACH PROSPECTIVE LIMITED PARTNER SHOULD CONSULT WITH ITS OWN COUNSEL, ACCOUNTANTS OR OTHER ADVISORS AS TO THE FEDERAL (AS WELL AS STATE AND LOCAL) TAX CONSEQUENCES OF ITS INVESTMENT IN THE PARTNERSHIP, WHICH MAY DIFFER SUBSTANTIALLY FOR DIFFERENT TYPES OF TAXPAYERS (INDIVIDUALS, CORPORATIONS, ETC.) IN PARTICULAR, INVESTMENT IN THE PARTNERSHIP BY ENTITIES SUBJECT TO ERISA AND BY OTHER TAX-EXEMPT ENTITIES REQUIRES SPECIAL CONSIDERATION. TRUSTEES OR ADMINISTRATORS OF SUCH ENTITIES ARE URGED TO CAREFULLY REVIEW THE MATTERS DISCUSSED IN THE MEMORANDUM.

<strong><u>FISCAL YEAR</u></strong>

The Partnership will close its fiscal year on December 31 of each calendar year.

<strong><u>ERISA CONSIDERATIONS</u></strong>

<u>General.</u>

22

GL025845

When deciding whether to invest a portion of the assets of a qualified profit-sharing, pension or other retirement trust in the Partnership, a fiduciary should consider whether: (i) the investment is in accordance with the documents governing the particular plan; (ii) the investment satisfies the diversification requirements of Section 404(a)(1)(c) of Employee Retirement Income Security Act of 1974, as amended ("ERISA"); and (iii) the investment is prudent and in the exclusive interest of participants and beneficiaries of the plan.

Plan Assets.

Under ERISA, whether the assets of the Partnership are considered "plan assets" is also critical. ERISA generally requires that "plan assets" be held in trust and that the trustee or a duly authorized General Partner have exclusive authority and discretion to manage and control the assets.

ERISA also imposes certain duties on persons who are "fiduciaries" of employee benefit plans and prohibits certain transactions between such plans and parties in interest (including fiduciaries) with respect to the assets of such plans. Under ERISA and the Code, "fiduciaries" with respect to a plan include persons who: (i) have any power of control, management or disposition over the funds or other property of the plan; (ii) actually provide investment advice for a fee; or (iii) have discretion with regard to plan administration.

If the underlying assets of the Partnership are considered to be "plan assets," then the General Partner and/or the General Partner could be considered a fiduciary with respect to an investing employee benefit plan, and various transactions between the General Partner or any affiliate and the Partnership, such as the payment of fees to the General Partner or General Partner, might result in prohibited transactions. A regulation adopted by the Department of Labor generally defines plan assets as not to include the underlying assets of the issuer of the securities held by a plan. However, where a plan acquires an equity interest in an entity that is neither a publicly offered security nor a security issued by certain registered investment companies, the plan's assets include both the equity interest and an undivided interest in each of the underlying assets of the entity unless: (i) the entity is an operating company or; (ii) equity participation in the entity by benefit plan investors (as defined in the regulations) is not significant (i.e., less than twenty-five percent (25%) of any class of equity interests in the entity is held by benefit plan investors). Benefit plan investors are not expected to acquire twenty-five percent (25%) or more of the Limited Partnership Interests. The General Partner intends to preclude significant investment in the Partnership by such plans. Employee benefit plans (including IRAs), however, are urged to consult with their legal advisors before subscribing for the purchase of Limited Partnership Interests.

Unrelated Business Taxable Income.

The Partnership may derive income that would be considered unrelated business taxable income, as defined in Section 512(a) of the Code, if derived directly by a Limited Partner exempt from taxation. Under Section 511(a) of the Code, such Limited Partner's allocable share of such income is taxable. In addition, a Limited Partner that is a tax-exempt organization described in Section 511(a) will be taxed with respect to its "unrelated debt financed income" pursuant to Section 514 of the Code. If, and to the extent the Partnership borrows to finance its transactions, a tax-exempt Limited Partner will be taxed on all the debt-financed portion of its income from an investment in the Partnership. Each such potential Limited Partner is urged to consult its own tax advisor with respect to the tax consequences of an investment in the Partnership.

ACCEPTANCE OF SUBSCRIPTIONS ON BEHALF OF EMPLOYEE BENEFIT PLANS IS IN NO RESPECT A REPRESENTATION BY THE GENERAL PARTNER OR THE PARTNERSHIP THAT THIS INVESTMENT MEETS ALL RELEVANT LEGAL REQUIREMENTS WITH RESPECT TO

GL025846

INVESTMENTS BY ANY PARTICULAR PLAN OR THAT THIS INVESTMENT IS APPROPRIATE FOR ANY PARTICULAR PLAN.

**OUTLINE OF SELECTED ITEMS IN THE LIMITED PARTNERSHIP AGREEMENT**

The following outline of Partnership Agreement briefly summarizes certain major provisions, some of which are not discussed elsewhere in this Memorandum. This outline is not comprehensive and each prospective Limited Partner should carefully read the Limited Partnership Agreement, annexed hereto as Exhibit B, in its entirety. Terms used in the following outline that are not otherwise defined herein shall have the meaning set forth in the Limited Partnership Agreement. References to sections or paragraphs shall be to those sections or paragraphs of the Partnership Agreement.

Limited Liability.

A Limited Partner will be liable for debts and obligations of the Partnership only to the extent of its Capital Contribution and Preferred Return.

Term.

The Partnership will terminate on the earliest of: (i) a determination by the General Partner that the Partnership should dissolve; (ii) the insolvency, bankruptcy or dissolution of the General Partner; (iii) the death or disability of all principal(s) of the General Partner; (iv) the withdrawal of the General Partner unless, upon said withdrawal, the Limited Partners select a General Partner to continue the Partnership; or (v) subject to the terms of the Partnership Agreement, any other event causing the dissolution under the laws of the State of Delaware.

Capital Calls.

The General Partner may (at any time that it determines that capital is required to invest in Purchased Settlements, provide working capital, establish reasonable reserves or pay Expenses, costs, losses or liabilities of the Partnership, and within the twelve (12) months from the receipt of each Initial Commitment), request in writing that the Limited Partners contribute cash to the capital of the Partnership ("Capital Call") up to their Commitment amount (the "Capital Contributions"). Each Limited Partner shall be required to deliver an amount equal to twenty five percent (25%) of its Commitment upon delivery of its subscription for such Commitment. All Capital Contributions shall be made after notice from the General Partner (the "Capital Call Notice") of (x) the amount to be contributed by each Limited Partner, (y) the date on which such contribution is due (the "Due Date"), which date shall not be sooner than fifteen business (15) days following receipt of the Capital Call Notice, and (z) the general purposes to which the Capital Contributions will be applied. The amount of cash required to be contributed by each Limited Partner shall be equal to a pro rata shares of each Limited Partner's Commitments. Nothing in this Agreement shall operate to increase any Limited Partner's Commitment, and no Limited Partner shall have any obligation to contribute any amounts in excess of such Partner's aggregate Commitment to the Partnership.

On a quarterly basis a Limited Partner may elect in writing to have all or a percentage of each and every distribution of the Preferred Return to that Limited Partner, in accordance with Sub-Paragraph 4.6 of the Partnership Agreement, credited by the General Partner to such Limited Partner's Capital Account as a Capital Contribution to reduce the Partner's Remaining Capital Commitment in an amount equal to the distribution, and to increase such Limited Partner's Capital Commitment to the extent such Capital Commitment is fully funded.

GL025847

Capital Accounts.

An opening capital account (the "Opening Capital Account" or the "Capital Account") shall be established for each Partner (whether General or Limited) on the books of the Partnership, upon the first Drawdown, and in accordance with the provisions of Treasury Regulations Section 1.704-1(b)(2)(iv). The General Partner shall also establish such sub-capital accounts (the "Purchased Settlements Sub-Accounts") as it deems necessary in its sole discretion.

The Capital Contributions made upon a Drawdown will first be paid to the Limited Partner's Capital Account and then re-allocated to a Purchased Settlements Sub-Account, which Purchased Settlements Sub-Account shall be allocated specific Purchased Settlement(s), such that each Purchased Settlements Sub-Account will not share in the profits or losses attributable to any other Purchased Settlements Sub-Account.

All credits and debits relating to Purchased Settlements shall be based on each Partner's "Partnership Percentage" which, for purposes of the Purchased Settlements Sub-Accounts, shall be determined by dividing the amount debited from each Partner's Capital Account and credited to the Purchased Settlements Sub-Account by the total cost of the Purchased Settlement at the time such Purchased Settlements Sub-Account(s) were created. An amount equal to each Partner's share of the cost and expenses directly related to the acquisition, ownership or disposition of the Purchased Settlement (based on the Partnership Percentages of all Limited Partners within a Purchased Settlements Sub-Account) shall be reflected by means of a debit from each Partner's Capital Account balance and credited to the separate Purchased Settlements Sub-Account(s).

Closing Capital Account.

The Closing Capital Account of each Partner shall be calculated as of the last day of each calendar quarter or on an Interim Date by (a) crediting or debiting, as the case may be, to the Capital Account in accordance with the respective Partnership Percentages, the difference between: (i) the total capital of all the Partners in such accounts at the beginning of such fiscal period, and (ii) the total capital of all the Partners in such accounts as of the end of such fiscal period, then

> (a) deducting any withdrawals made by such Partners, then

> (b) crediting to the Capital Account in accordance with the respective Partnership Percentages, distributions from Purchased Settlements Sub-Accounts, Expenses, and adjustments for any Events of Default.

General Partner's Carried Interest

The General Partner or its designee shall receive compensation which shall be equal to the proceeds received from the gross receipts to the Partnership minus the aggregate Capital Contributions and Preferred Return.

Defaulting Limited Partner

The failure by any Limited Partner to make, within fifteen (15) Business Days after a Capital Call Notice, payment of any portion of the Capital Contribution required to be contributed by such Limited Partner pursuant to the Capital Call Notice shall constitute an event of default by such Limited Partner "Event of Default". Upon the occurrence of an Event of Default, such defaulting Limited Partner (the "Defaulting Limited Partner") shall be subject to, in the General Partner's sole discretion, any or all of the following provisions:

GL025848

(a) A Defaulting Limited Partner may be charged an additional fee of 18% on the unpaid balance of any overdue Capital Contributions or other payments, including interest thereon;

(b) Whenever the vote, consent or decision of a Limited Partner or of the Partners is required or permitted pursuant to this Agreement, except as required by the Act, a Defaulting Limited Partner shall not be entitled to participate in such vote or consent; and

(c) The General Partner shall have the right in its sole discretion to take any or all of the following actions: (i) determine that a Defaulting Limited Partner shall forfeit to the non-defaulting Partners all Distributions (as such term is defined in the Limited Partnership Agreement) of Preferred Return that such Defaulting Limited Partner would otherwise receive, and/or (ii) assess a twenty-five percent (25%) reduction in the Capital Account balance of the Defaulting Limited Partner; and/or (iii) assess a default fee against the Defaulting Limited Partner in an amount up to twenty-five percent (25%) of the Defaulting Limited Partner's Commitments, and/or (iv) assess a default fee of up to one-hundred percent (100%) of the Distributions of Preferred Return which the Defaulting Limited Partner has previously received, which reversal may be charged, in whole or in part, to the Capital Account of the Defaulting Limited Partner. Any amounts withheld from the Defaulting Limited Partner by the Partnership pursuant to clauses (i) or (ii) above shall be allocated and distributed to the other Limited Partners in proportion to their pro rata percentage interests in the Partnership or, in the case of a distribution upon liquidation, in proportion to the liquidating distributions to the Limited Partners.

<u>Distributions</u>

The General Partner shall cause the Partnership to pay the Preferred Return to the Limited Partners at least on a quarterly basis, and in its sole discretion, to make additional distributions that amount to a return of capital at any time in its sole discretion.

<u>Distribution Waterfall</u>

Subject to the Limited Partners' right to reinvest their Distributions, the Partnership's (a) Income will first be distributed pro rata to Limited Partners in an amount equal to their Preferred Return, then to the General Partner, and (b) distributions of Capital Proceeds will first be distributed pro rata to Limited Partners as a return of capital, then to the General Partner, subject to the General Partner's obligation to maintain a capital account balance of ten percent (10%) of the aggregate Capital Contributions as of the date of such Distribution.

Upon liquidation, Distributions will first be made pro rata to Limited Partners in an amount equal to their outstanding Capital Account balances (including accrued but unpaid Preferred Return), and the remainder to the General Partner. The General Partner will have a Claw Back obligation to the extent the Limited Partners have not received 100% of their Capital Account balances (together with the accrued but unpaid Preferred Return), which Claw Back is personally guaranteed by the George G. Levin, the Managing Member of the General Partner.

GL025849

Partnership Expenses.

The General Partner may provide, or incur on behalf of the Partnership, office space, utilities, general office expenses and expenses related to the Purchased Settlements. Fees and expenses incurred by the General Partner on behalf of the Partnership for office space, utilities, general office expenses and expenses related to the Purchased Settlements will be paid by the General Partner. The General Partner will pay on behalf of the Partnership any and all legal, accounting and other professional fees, custodial fees, and bank service fees and any taxes applicable to the Partnership on account of its operations and shall also pay any and all other reasonable expenses related to the management and operation of the Partnership as the General Partner shall determine in its sole discretion. Moreover, the General Partner shall be responsible for all extraordinary expenses incurred on behalf of the Partnership or the General Partner, including, without limitations, all costs associated with the prosecution and/or defense of any litigation involving the Partnership and/or the General Partner.

Valuation of Partnership Assets; Determinations by General Partner

All assets and liabilities will be valued in accordance with generally accepted accounting principles ("GAAP"). The General Partner may value the Partnership's assets and the Limited Partners' Capital Accounts as of an Interim Date (due to a withdrawal of capital or of a Capital Contribution). Any accounting, administrative, legal or other fees incurred as a result of such interval date valuation shall be borne by the General Partner.

The General Partner's good faith determination, made in accordance with the terms of the Limited Partnership Agreement, of the value of a position in a circumstance where fair market value cannot be readily ascertained will be final and binding upon the Limited Partners and their representatives.

The General Partner's determinations on accounting matters, made after consultation with the independent certified public accountant for the Partnership, will be final and binding upon all Limited Partners and their representatives.

Withdrawals of Capital from the Capital Account of a Limited Partner.

During the first twelve month (12) month period after the date of a Limited Partner's first Capital Contribution (the "Lock-Up Period"), such Limited Partner may not withdraw any portion of its Capital Account, except as otherwise may be permitted by the General Partner in its sole discretion.

Subject to the Lock-Up Period described above, and the General Partner's right to limit withdrawals as set forth below, a Limited Partner may request to withdraw all or a portion of its Capital Account, on at least ninety (90) days prior written notice to the General Partner of the date of withdrawal (the "Effective Withdrawal Date"), which withdrawal the General Partner may elect not to allow, if, in its absolute discretion, the General Partner determines that such a refusal is in the best interest of the Partnership.

The General Partner will distribute ninety percent (90%) of the withdrawal request by a Limited Partner, immediately to the extent available from the Limited Partner's Capital Account, and otherwise ratably over the life of all Purchased Settlements in which the Partnership has invested as of the Effective Withdrawal Date (which the General Partner anticipates will be a period of approximately nine (9) to fourteen (14) months) with the unpaid balance continuing to accrue the Preferred Return. The remaining ten percent (10%) balance, together with accrued Preferred Return, shall be distributed within ten (10) business days of receipt by the Partnership of its annual audited financial statements for the year in which the final payment is made.

27

GL025850

The General Partner may, in its sole discretion, (a) waive the Lock-Up Period; or (b) waive the Limited Partner's obligation to provide ninety (90) days prior written notice of its intention to withdraw capital.

There shall be no limitation on Distributions to the General Partner, except for the General Partner's obligation to maintain a capital account balance of ten (10%) percent of the net aggregate Capital Contributions, as of the date of such Distribution.

The right of a Limited Partner to withdraw capital is also contingent upon, among other things:  (i) the availability of cash, the Partnership otherwise having assets sufficient to meet its investment objectives and to discharge its liabilities and anticipated liabilities on and as of the designated withdrawal date; and (ii) the existence of any event, circumstance, or condition, which, in the good faith judgment of the General Partner precludes the Partnership from or renders inadvisable the making of any withdrawal payment under the Partnership Agreement.

Any legal, accounting or administrative Expenses incurred by the Partnership as a result of such withdrawal shall be borne by the General Partner.

The Limited Partnership Agreement also provides the right for the General Partner to give five (5) Business Days notice to a Limited Partner requiring the withdrawal of the Limited Partner as of the Calendar Quarter or the end of a fiscal year.  However, if the General Partner, in its sole discretion, believes that the continued participation of any Limited Partner might cause the Partnership to violate any law; such Limited Partner may be required to withdraw immediately.  A Limited Partner who is required to withdraw on such five (5) Business Days notice will be paid in accordance with Paragraph 6.2 of the Limited Partnership Agreement.

Admission of New Limited Partners.

New Limited Partners may be accepted quarterly on the first day of each calendar quarter, or on such other date(s) as the General Partner may determine.  Each new Limited Partner will be required to execute the appropriate subscription documentation, pursuant to which it becomes bound by the terms of the Limited Partnership Agreement.

Substitute General Partner.

The General Partner will have the right by written notice to the Limited Partners, without any action by the Limited Partners, to add or delete members of the General Partner or to substitute for itself a new general partner, if such new General Partner is affiliated with, controls, is controlled by, or is under common control with the General Partner herein.

Amendments to Agreement.

The Limited Partnership Agreement may be amended by the General Partner pursuant to its Power of Attorney in any manner that does not adversely affect the Limited Partners, including any amendment to reflect changes validly made in the membership of the Partnership and the Capital Contributions of the Limited Partners.

The Limited Partnership Agreement may also be modified or amended at any time in writing, signed by the General Partner and by Partners who hold Limited Partnership Interests representing in the aggregate more than a Majority in Interest of the Interests of all Partners relating to the applicable fiscal period in which the vote takes place.  However, without the specific consent of each Partner, no such modification or amendment will reduce the Capital Account of any Partner or its rights of contributions or withdrawal with respect thereto.

GL025851

Reports to Limited Partners.

As soon as practicable and in any event within thirty (30) days after the end of each fiscal quarter (including the last fiscal quarter of the Partnership's fiscal year), the General Partner shall deliver to each Limited Partner (i) a balance sheet of the Partnership as at the end of such fiscal quarter and the related statements of operations and cash flows for such fiscal quarter, and for the portion of the Fiscal Year ended at the end of such fiscal quarter, all in reasonable detail and certified by the General Partner as fairly presenting the financial condition and results of operations of the Partnership and as having been prepared in accordance with GAAP applied on a basis consistent with the audited financial statements of the Partnership, subject to changes resulting from audit and normal year-end adjustments and the absence of footnote disclosures; and (ii) a report prepared by a firm of independent certified public accountants satisfactory to a Majority in Interest of the Limited Partners stating that such accounting firm has verified, as of the end of such fiscal quarter, (a) funds on deposit in trust accounts representing proceeds of Purchased Settlements, and (b) documentation confirming the Partnership's right to receive such funds upon disbursement from such trust accounts.

The General Partner shall prepare and mailed to each Limited Partner, as soon as practicable after the close of each fiscal year, but in no event later than one hundred fifty (150) days thereafter: (i) audited financial statements prepared in accordance with GAAP and audited by a firm of independent certified public accountants satisfactory to a Majority in Interest of the Limited Partners; and (ii) any other information necessary to enable such Limited Partner to prepare its individual income tax returns. The first complete audit of the Partnership will occur for the 2009 fiscal year. However, the General Partner shall use its best efforts to have prepared and mailed to each Limited Partner, as soon as practicable after the close of the 2009 fiscal year, all information necessary to enable such Limited Partner to prepare its individual income tax returns for the 2009 fiscal year. Notwithstanding the foregoing, due to the nature of the Partnership's investments, the ability to provide the above information may depend upon the receipt, by the Partnership, of timely information in certain cases, from unaffiliated third parties. Therefore, Limited Partners acknowledge that they may be required to file for extensions with various federal and state taxing authorities.

Limited Partner's Indemnification of the Partnership.

Nothing in the Limited Partnership Agreement, nor any action taken under the Limited Partnership Agreement, including the withdrawal by a Limited Partner of some or all of its Capital Contributions, shall affect the right of the Partnership to claim a return of that part of a withdrawn Limited Partner's Capital Contribution up to the maximum of such Contribution necessary to discharge applicable debts, taxes, and obligations which arose prior to any such withdrawal from the Partnership. All rights of the Partnership will be exercised in accordance with applicable statutes and regulations applying to the Partnership.

No waiver of a provision of the Limited Partnership Agreement will be deemed a waiver of any other provisions nor will a waiver of the performance of a provision in one or more instances be deemed a waiver of future performance thereof.

In the event the Partnership is made a party to any claim, dispute or litigation or otherwise incurs any loss or expense, including reasonable attorneys' fees, as a result of or in connection with any Limited Partner's obligations or liabilities unrelated to the Partnership's business, such Limited Partner will indemnify and reimburse the Partnership for all loss and expense incurred, including attorneys' fees.

GL025852

Standard of Liability and Indemnification

None of the General Partner or its principal(s), Affiliate(s), manager(s), member(s), stockholder(s), director(s), partner(s), officer(s), employee(s) and/or agent(s) (collectively "Indemnified Persons") will be liable to the Partnership or any Limited Partner for: (i)  mistakes of judgment or for any act taken, or omission suffered by it or by him, or for any "Losses," defined herein, arising out of or relating to any mistakes, action or inaction, except to the extent of the willful misconduct or gross negligence of such Indemnified Person as determined by a final judgment (after all appeals and the expiration of time to appeal) of a court of competent jurisdiction; or (ii) the willful misconduct or gross negligence of any officer, director, employee, representative, consultant, independent contractor, broker or agent of the Partnership or any Indemnified Person, provided that such officer, director, employee, representative, consultant, independent contractor, broker or agent (including any who may be a Limited Partner), was selected, engaged or retained in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Partnership.  Each Indemnified Person will be entitled to rely in good faith on the advice of counsel, accountants or other such independent persons experienced in the matter at issue and (subject to the immediately preceding sentence) any act or omission of any Indemnified Person in reasonable reliance on such advice will in no event subject any Indemnified Person to any liability to the Partnership or to any Limited Partner.

The Partnership will, out of Partnership assets, including, without limitation, any insurance proceeds, to the fullest extent permitted by applicable laws, indemnify and hold harmless each Indemnified Person from and against any and all claims, damages, losses, Expenses, penalties, judgments or liabilities of any nature whatsoever, including, but not limited to, legal fees, expenses and costs associated with investigating or preparing the defense of any proceeding or investigation, giving testimony or furnishing documents in response to a subpoena (collectively, the "Losses") to which any such Indemnified Person may become subject in connection with, rising out of or related to this Agreement or to the operation and affairs of the Partnership provided, however, that foregoing indemnification will not apply to any Losses that are determined by final judgment (after all appeals and the expiration of time to appeal) of a court of competent jurisdiction to have resulted from the willful misconduct or gross negligence of such Indemnified Person.

[Remainder of this Page is left blank intentionally]

30

GL025853

## LIMITATIONS ON TRANSFERABILITY

Each purchaser of an Interest must bear the economic risk of its investment for an indefinite period of time (subject to its right to withdraw capital from the Partnership) because the Limited Partnership Interests have not been registered under the Securities Act and, therefore, cannot be sold unless they are subsequently registered under the Securities Act or an exemption from such registration is available. It is not contemplated that any such registration would ever be affected, or that certain exemptions provided by rules promulgated under the Securities Act (such as Rule 144) will ever be available. The Limited Partnership Agreement provides that a Limited Partner may not assign or encumber its Interest (except by operation of law), nor substitute another person as a Limited Partner, without the prior consent of the General Partner, which consent may be withheld for any reason. The foregoing restrictions on transferability must be regarded as substantial, and will be clearly reflected in the Partnership's records.

## FINANCIAL STATEMENTS

Audited financial statements for the Partnership, when available, can be obtained from the General Partner.

## LITIGATION

During the past five years, there has been no material litigation involving the Managing Member or the General Partner.

Commencing in the 1970s, Mr. Levin owned and operated GGL Industries, Inc. d/b/a Classic Motor Carriages, which sold sold "kit cars" to customers around the world. In 1985, Mr. Levin ceased being involved in management of GGL and turned his attention to some of his other business ventures, although he retained ownership. GGL was quite successful in marketing the car kits. However, in Mr. Levin's absence, management both failed to adequately supervise telephone sales activities and failed to ensure that its capacity to deliver kits in a timely fashion kept up with orders. The resulting backlog and unmet promises made by disappointed many customers, and gave rise to numerous complaints.

In 1994, the Florida Attorney General filed a civil enforcement action against GGL, Mr. Levin and management. Mr. Levin retook operating control of GGL and began aggressively addressing the complaints and investing substantial sums into GGL as part of that effort. GGL ceased new sales of kits and formed a new entity, Auto Resolutions, Ltd. for the purpose of satisfying all outstanding kit orders and resolving all customer complaints. GGL was also notified by the U.S. Attorney's Office that it had opened an investigation into wire fraud issues related to the interstate telephone solicitations.

Mr. Levin instructed his legal counsel to negotiate a voluntary enforcement agreement with the Florida Attorney General to resolve the customer complaints and to enter into discussions with the U.S. Attorney's Office to propose a joint solution. In 1999, GGL, Mr. Levin and Auto Resolutions entered into a settlement agreement with Florida. Under the settlement agreement, Florida acknowledged the remedial steps taken by Mr. Levin and Auto Resolutions and they agreed to deposit $400,000 into escrow to resolve any outstanding issues. The remedial steps under the settlement agreement were successfully concluded.

Concurrently with the Florida settlement, GGL agreed to plead guilty in Federal court to one count of wire fraud and was sentenced to two years' probation and a $25,000 fine. GGL also agreed to complete the restitution set forth in the Florida settlement.

31

GL025854

Auto Resolutions recommenced the sale of kit cars in August 1998 and has operated in full compliance with the Florida settlement agreement.

## ACCOUNTING

Anchin, Block & Anchin LLP, 1375 Broadway, New York, New York 10018 shall act as independent certified public accountants for the Partnership.

## ADDITIONAL INFORMATION

The General Partner will make available to any prospective Limited Partner any additional information which it possesses, or which it can acquire without unreasonable effort or expense, necessary to verify or supplement the information set forth herein.

GL025855